# United States District Court

## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| V. | **CRIMINAL COMPLAINT** |
| **RICKY CLARK** | CASE NUMBER: 1:16-mj-0567 |

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  Between on or about January 31, 2015 and April 14, 2016, in Hendricks County, in the Southern District of Indiana defendant did,

**Count 1**: Attempted Sexual Exploitation of a Minor, in violation of 18 U.S.C. § 2251(a) and (e);

**Count 2**: Sexual Exploitation of a Minor, in violation of 18 U.S.C. § 2251(a);

**Count 3**:   Coercion or Enticement of a Minor, in violation of 18 U.S.C. § 2422(b);

**Count 4**: Distributing and Receiving Visual Depictions of a Minor Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(2); and

**Count 5**:   Possession of Visual Depictions of a Minor Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(4)(b) and (b)(2).

I further state that I am a Special Agent, and that this complaint is based on the following facts:

See attached affidavit

Continued on the attached sheet and made a part hereof.

Kurt Spivey, Task Force Officer/FBI

Sworn to before me, and subscribed in my presence

September 2, 2016          at    Indianapolis, Indiana
**Date**

Debra McVicker Lynch, U.S. Magistrate Judge      _/s/ Debra McVicker Lynch_
**Name and Title of Judicial Officer**                         **Signature of Judicial Officer**

## **AFFIDAVIT**

I, Kurt Spivey, a Task Force Officer with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

1. **Affiant:** I, Detective Kurt B. Spivey with the Indianapolis Metropolitan Police Department have been a law enforcement officer for 20 years. I am a Detective in the Cybercrime Unit of the Indianapolis Metropolitan Police Department. I am also a cross designated Task Force officer assigned to the FBI the Indianapolis Violent Crimes Against Children Task Force. During the last 10 years of my career, my primary responsibility has been the investigation of Child Pornography, Child Exploitation, and Child Solicitations. I have been an active member of the Indiana Internet Crimes Against Children (ICAC) Task Force for 10 years.

2. **Training:** As an ICAC member, I have received numerous training opportunities including; ICAC Investigative Techniques, ICAC Undercover Chat, The ICAC National Conference and the Crimes Against Children National Conference. I have also attended the Purdue University On-Scene Forensic Preview Training as well as the TLO Fairplay P2P Course. As an ICAC member, I have received continuous and on-going training through working with other ICAC members who are experts in their field, I attend monthly training meetings, and I gain knowledge and experience from conducting these investigations on a daily basis. In January of 2014, I was appointed to the FBI Child Exploitation Task Force as a Task Force Officer. This position, as well as federal investigations that I have previously conducted, has broadened my experience into the federal system, providing additional case-experience, working knowledge, and training opportunities.

3. **Information provided**: The statements in this affidavit are based on information obtained from my observations and communications, as well as information learned from other law enforcement officers and witnesses, including, but not limited to, Indiana State Police Trooper Ginger Marshall (Marshall), an investigator who is also assigned to the ICAC. Because this affidavit is being submitted for the limited purpose of securing an arrest warrant and criminal complaint, I have not included each and every fact known to the investigators concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that RICKY CLARK (CLARK) committed criminal offenses.

4. **Requested action**: I make this affidavit in support of an application for an arrest warrant and criminal complaint charging CLARK with the following offenses:

   a. **Count 1**: Attempted Sexual Exploitation of a Minor, in violation of 18 U.S.C. § 2251(a) and (e);

   b. **Count 2**: Sexual Exploitation of a Minor, in violation of 18 U.S.C. § 2251(a);

   c. **Count 3**: Coercion or Enticement of a Minor, in violation of 18 U.S.C. § 2422(b);

   d. **Count 4**: Distributing and Receiving Visual Depictions of a Minor Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(2); and

   e. **Count 5**: Possession of Visual Depictions of a Minor Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(4)(b) and (b)(2).

5. **Statutes:**

   a. **Sexual Exploitation of a Minor (and Attempted Sexual Exploitation of a Minor):** This investigation concerns alleged violations of 18 U.S.C. § 2251(a) and (e), which prohibits a person from employing, using, persuading, inducing,

enticing, or coercing any minor or attempting to employ, use, persuade, induce, entice, or coerce any minor to engage in, or who has a minor assist any other person to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, knowing or having reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

b. **Coercion and Enticement (18 U.S.C. § 2422(b))**: Under the United States Code, it is unlawful for a person to use the mail or any facility or means of interstate or foreign commerce to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense. This statute incorporates both state and federal law in determining whether the underlying sexual activity is a criminal offense, including the federal law prohibiting the sexual exploitation of a child (18 U.S.C. § 2251(a)).

c. **Distribution, Receipt and Possession of Visual Depictions of Minors Engaged in Sexually Explicit Conduct**: This investigation concerns alleged violations of 18 U.S.C. § 2252, which generally prohibits a person from knowingly

transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction, where the producing of such visual depiction involves the use of a minor, and including at least one minor who is less than 12 years of age or who is a prepubescent minor, engaging in sexually explicit conduct; and such visual depiction is of such conduct; and where the visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or foreign commerce.

6. **Child Victims:**

   a. **Child Victim 1:** The pseudonym "CHILD VICTIM 1" represents a minor child whose age is unknown but who is clearly less than 18 years of age, and in fact, appears to be a toddler.

   b. **Child Victim 2:** The pseudonym "CHILD VICTIM 2" represents a minor female, who was 11 or 12 years old during the charged conduct.

7. **Definitions:** The following definitions apply to this Affidavit:

   a. "Minor" means any person under the age of eighteen years. *See* 18 U.S.C. § 2256(1).

   b. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person. *See* 18 U.S.C. § 2256(2).

c. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

d. The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

e. Skype: "is an application that provides video chat and voice call services. Users may exchange such digital documents as images, text, video and any others, and may transmit both text and video messages. Skype allows the creation of video conference calls. Skype is available for Microsoft Windows, Macintosh, or Linux, as well as Android, Blackberry, Apple and Windows smartphones and tablets. . .. Skype allows users to communicate over the Internet by voice using a microphone, by video using a webcam, and by instant messaging. Skype-to-Skype calls to other users are free of charge, while calls to landline telephones and mobile phones (over traditional telephone networks) are charged via a debit-based user account system called Skype Credit."[1] Skype Technologies is a telecommunications company headquartered in Luxembourg City, Luxembourg and Redmond, Washington, United States.

**Probable Cause**

8. <u>Investigation:</u> In February of 2015, this affiant was assigned a Child Exploitation Case after receiving a Cybertip from the National Center of Missing and Exploited Children

---

[1] Wikipedia, https://en.wikipedia.org/wiki/Skype.

("NCMEC"). The Cybertip was received by NCMEC on January 31, 2015. It was reported by an anonymous source, who described her conversation with a subject on the website of wattpad.com. According to the Cybertip, during the conversation, the adult male subject who used the screen name of "TYTYN70" discussed his sexual activities with young girls. An open source data search connected "TYTYN70" to the Twitter.com and Tumblr.com accounts of Ricky Dean Clark, W/M, date of birth of August 2, 1981, with the distinctive feature of being over 7 feet in height, according to his account profile. I continued my investigation, but I could not locate Ricky Dean Clark.

9. On May 12, 2016, Detective Ginger Marshall (Marshall) of the Indiana State Police contacted this affiant. Detective Marshall is assigned to the Internet Crimes Against Children Task Force and I have worked with her on numerous occasions.

   a. Detective Marshall explained that she had received a NCMEC lead on April 14, 2016, which identified Ricky Clark as a suspect in a matter involving the Online Enticement of Children for Sexual Acts. Ricky Clark was associated through the screen names of "Master Daddy" and "TYTYN7" (a variation of the previously used account name of "TYTYN70").

   b. Detective Marshall discovered that I had an open investigation on the same subject. Marshall advised me that detectives in South Bend, Indiana had also received an additional NCMEC lead dated July 16, 2015, with Ricky Clark as the suspect in a matter involving the Online Enticement of Children for Sexual Acts. In the July 16, 2015 report, Ricky Clark was again associated with the screen name of "TYTYN70".

10. Open source data base searches provided new and updated information indicating new employment possibilities as well as new address information for Ricky Dean Clark.

11. **Initial Contact with CLARK**: On Monday, June 13, 2016, Marshall and I arrived at 1564 S. County Road 1050E, in Hendricks County, Indiana in the Southern District of Indiana. We went there to talk to Ricky Clark, DOB August 2, 1981, about the three Cybertip leads that came from the NCMEC. We were both in plain clothes but carried police identification.

12. A woman later identified as Ricky Clark's mother answered the door. Marshall and this affiant identified ourselves to her. The mother called Ricky Clark to the door. A man later identified as Ricky Clark ("CLARK") came to the door. This man was over 7 feet tall.

13. CLARK invited this affiant and Marshall into the residence and we all sat in the living room and began to talk.

   a. I started an audio recorder as I advised CLARK that he did not have to talk to us. CLARK was not under arrest at that point and was free to leave the residence.

   b. I asked CLARK about whether CLARK was in possession of any sexually explicit images of minor girls. CLARK indicated that there were illegal images on his phone, which he described as nude young girls, under the age of 16.

   c. At this point, I believed that CLARK was in possession of contraband in the form of sexually explicit images of minor children on his cell phone.

   d. I advised CLARK that we were going to secure the device and would apply for a search warrant for that device and the residence.

   e. CLARK stood up on his own accord and walked to the bedroom on the west side of the residence, as CLARK indicated that he would produce the phone. I

followed CLARK into the bedroom and CLARK reached to the backside of the mattress, which was on the floor, and produced a cell phone. I noticed that CLARK had walked past a cell phone in plain view that was immediately accessible, in order to get a phone that was not immediately accessible. This cell phone was also in the bedroom and was on top of a computer, which was in front of the mattress. I believe that this phone was also connected to the computer, via a phone cord.

f. When I asked CLARK about that cell phone, he picked that phone up and unplugged it. As I reached for it, CLARK pulled it to the far side of his body and turned away. CLARK then began to attempt to physically destroy the cell phone in his hand.

g. To prevent the destruction of evidence, I attempted to secure the phone for the purpose of obtaining a search warrant.

h. After a physical struggle with CLARK, during which time he physically resisted my efforts to secure the cell phone, which I believed to contain child pornography, I was able to place CLARK under arrest. CLARK did break the cell phone in question into multiple pieces.

i. CLARK was arrested for Obstruction of Justice and Resisting Law Enforcement by Force. He was transported for a medical check-out by wagon with a final destination of the Hendricks County Jail. CLARK was later also charged with 15 counts of Possession of Child Pornography in Hendricks County, Indiana.

14. **Search Warrant for Digital Devices**: On June 13, 2016, a court in Hendricks County, Indiana issued a search warrant for CLARK's electronic devices, including the cell

phones and their associated parts, including SD / memory cards, and an Acer laptop computer CLARK's bedroom.

15. **Forensic Interview of CLARK's daughter:** On June 14, 2016, CLARK's children were interviewed at Susie's Place Children's Advocacy Center in Avon, Indiana. CLARK's minor daughter, whose identify is known to law enforcement and who is less than 12 years of age, made disclosures. She indicated that while staying at her dad's residence, she awoke to CLARK standing over her. She stated "I think he touched me in the wrong area." She further described sleeping in the same bed as CLARK, when he slid his hands down her pants. She further indicated on a body diagram that CLARK touched her on the buttocks.

16. **Forensic Examination of Digital Evidence**: On August 12, 2016, I met with Indiana State Police Sergeant Jennifer Barnes (BARNES), who is a law enforcement officer and a forensic examiner. Barnes presented an updated forensic report, which outlined the digital/electronic evidence retrieved from the devices taken from Ricky Clark on June 13, 2016. She also provided to this affiant images and videos recovered from the devices.

17. **CHILD VICTIM 1:** Located on the Acer Laptop that was recovered from CLARK's bedroom was a video that appears to have been recorded by CLARK himself. It appears that CLARK was using a laptop computer (with a web camera feature) or other handheld digital device to create the visual depiction.

   a. In the video, CLARK recorded his face. He then entered the bedroom of a prepubescent, toddler aged child, who appears to be sleeping. The identity of this child is currently unknown to law enforcement.

   b. This child will now be referred to as "CHILD VICTIM 1."

c. CLARK pulled the diaper or pull-up worn by CHILD VICTIM 1 away from the body, in an attempt to expose the child's genital / anal area. CLARK inserted his fingers into the diaper / pull-up of the child in the crotch area, appearing to actually touch the child's pubic / anal area. CLARK would release the diaper and slightly move away when the child moved or reacted to the physical contact.

d. CLARK again approached CHILD VICTIM 1. He again pulled the diaper or pull-up away from the body of CHILD VICTIM 1. CLARK then lowered his head to the genital /anal area of the child and appeared to lick the genital / anal area of CHILD VICTIM 1.

e. As CLARK backed away from the child, CLARK appeared to be holding the laptop / digital device and looked at the screen as if he was chatting or carrying a conversation with another person on the computer. CLARK left the child and walked into an adjoining room, at which time, his face and distinctive size were clearly visible in the video. CLARK looked directly into the recording device and made a gesture with his tongue which this affiant knows to be associated with performing oral sex on a female.

f. In so doing, CLARK attempted to create a visual depiction of a minor engaged in sexually explicit conduct, specifically an act of oral-genital or oral-anal contact, and the visual depiction that CLARK attempted to create is of this conduct.

g. This video file was named, "OM...G.avi" and was located in the folder: \Program Files (x86)\001\Map\Nova pasta\VIDEO\Nova pasta\VIDEO\超强幼幼合集1（

多图多影象）\vids. It would appear that the video was created on or about June 2, 2013.

 h. This same video, "OM...G.avi" was also found on the micro SD card that was found in the Samsung phone identified in the forensic report as Item 6. It was located along with other child pornography videos in the folder " \Video\vids."

  1)   The file had been deleted, but was later recovered by Sergeant Barnes through forensic processes.

  2)   The file itself was created on the Samsung phone on 9/19/2015.

18. **CHILD VICTIM 2:** Discovered in CLARK's collection of visual depictions of minors engaged in sexually explicit conduct were numerous videos of a minor female, who is less than 16 years of age, whose identity is known to law enforcement. She will now be referred to as "CHILD VICTIM 2."

 a. CHILD VICTIM 2 has been identified through communication with an individual who knows the identity of CHILD VICTIM 2 and who reports that he is a relative of CHILD VICTIM 2. This individual, whose identity and whereabouts are known to law enforcement, provided a facial photograph of CHILD VICTIM 2 and a copy of her birth certificate to Det. Ginger Marshall.

 b. Marshall has made a comparison of the images recovered by Barnes and the information sent to her by the relative of CHILD VICTIM 2 and believes them to be the same person. Additionally, the name of CHILD VICTIM 2 that appears in communications with CLARK is the same name provided by the relative of CHILD VICTIM 2.

    c. Based on the information provided, CHILD VICTIM 2 was 11 or 12 years of age at the time of all conduct relevant to this case.

19. Per the Digital Media Exam Summary prepared by Sergeant Barnes, there were 17 videos recovered of CHILD VICTIM 2. They were located on the Acer Laptop computer, listed in the forensic report as Item #11. This laptop was recovered from CLARK's bedroom.

    a. Some of the videos have creation dates contained in their file names and were created on or between May 3, 2015 – May 5, 2015 and on September 16, 2015.

    b. Other videos do not have the creation date in their titles, but based on the forensic examination, it is believed that the videos were created on or between August 23, 2015 and March 7, 2016.

    c. In the videos, CLARK is engaged in sexually explicit communication with CHILD VICTIM 2 using Skype. In some of the videos, CLARK's Skype feed (his face, video of him masturbating, etc.) is also captured.

    d. Some of the videos appeared to be made by pointing a camera at the screen of a computer or cell phone while CLARK is engaged in sexually explicit communication with CHILD VICTIM 2.

    e. Other videos appear to be made with a screen capture software.

    f. In the videos, CHILD VICTIM 2 is engaged in sexually explicit conduct. In these videos, CLARK is verbally directing CHILD VICTIM 2 on exactly what to do and on how to ensure that the sexually explicit conduct is being captured on the recording device.

    g. During at least one of these videos, the audio conversation between the CLARK and CHILD VICTIM 2 was also recorded and recovered along with the video.

      CLARK's unique and identifiable voice is heard specifically directing, urging, and commanding CHILD VICTIM 2 to disrobe and to engage in sexually explicit conduct. CLARK also directed CHILD VICTIM 2 to move in ways to ensure that the sexually explicit conduct is captured on camera so that CLARK can see it.

h. Throughout these visual depictions, in the recorded images and conversations, CLARK referred to the videos as "child pornography" and/or the acts performed by CHILD VICTIM 2 as "child pornography." He referred to himself as a "PEDOPHILE." Additionally, he referred to CHILD VICTIM 2 as his "LOLITA" and "LITTLE LOLITA". Through my training and experience, I know these terms to be directly related to child pornography.

i. During at least one video and in other communications with CHILD VICTIM 2, CLARK is persuading, inducing, enticing and coercing CHILD VICTIM 2 to engage in sexually explicit conduct, for the purpose of creating visual depictions of such conduct.

j. In the video created on May 3, 2015, CHILD VICTIM 2 is shown in one portion of the screen, with her genital and pubic area exposed to the camera. This affiant can hear CLARK instruct CHILD VICTIM 2 to touch her vagina, to insert a finger into her vagina, and to masturbate. When CHILD VICTIM 2 stopped and covered her exposed vagina, CLARK pressured her and coerced CHILD VICTIM 2 to again uncover and expose her vagina and continue to masturbate. He told CHILD VICTIM 2 "You will never be my girlfriend if you don't do this" and "Keep going. I will not be your boyfriend until you cum for me. Ever!" CLARK referred to CHILD VICTIM 2 as his "sexy little pedo-princess". I know

through training and experience that "pedo" is a shortened term for pedophilia or pedophile. CLARK can be heard referring to CHILD VICTIM 2's exposed genital and pubic area as a "pretty little pre-teen pussy."

    k. In the videos, when CLARK provided verbal direction to CHILD VICTIM 2, she would respond by changing her behavior to accommodate CLARK's requests, and CHILD VICTIM 2 occasionally responded verbally.

    l. In addition to the video and audio evidence, the video service also has text messaging. These chat sessions were also recovered from the digital storage of the device.

20. **Distribution of Visual Depictions of Minors Engaged in Sexually Explicit Conduct to CHILD VICTIM 2:** CLARK also distributed images of child pornography to CHILD VICTIM 2 as the two communicated through Skype.com. CLARK distributed these images to CHILD VICTIM 2 for the purpose of enticing CHILD VICTIM 2 to engage in sexually explicit conduct. CLARK then created visual depictions of this sexually explicit conduct. CLARK transmitted a video of child pornography which contained a victim who is known to law enforcement as "Tara." The entire "TARA" series of videos and still images were collected and stored on CLARK's devices.

    a. On one of the received videos, CLARK can be heard saying "The date is 9 – 27. Me and my little Lolita girlfriend are watching child porn together and she is going to have the best orgasm ever watching this child porn." CLARK then directed CHILD VICTIM 2 to take off her pants and she disrobed. CLARK directed CHILD VICTIM 2 to lie back so that he could see her face and vagina at

the same time. CLARK referred to CHILD VICTIM 2 as "my little pre-teen pedo princess."

b. The recording itself depicted a screen capture of activity on CLARK's laptop. The screen showed him browsing and selecting a video titled "TakingEMHome". As the video played, it displayed a video of child pornography. CLARK stated "That's the child porn I love most. Our personal child porn." He then referred to the video by saying "This 13 or 14-year-old girl takes that cock" as the video displayed an adult male inserting his penis into the vagina of a young girl who appears to be around the age of 13 – 14 years of age. The video "TakingEMHome" was located on the Acer Laptop belonging to CLARK.

c. Within the same video, CLARK displayed a video titled "Luvvvy (1).mpeg," which was located by Sergeant Barnes on the Acer Laptop. CLARK asked CHILD VICTIM 2, "Want to watch these 15 year old girls eating each other out? That is what this is." The video on the screen depicts two young girls, approximately 15 years of age, engaged in oral intercourse.

d. When showing a video of known child pornography to CHILD VICTIM 2 using Skype, a video that CLARK calls "Baby J," CLARK can be heard saying "look at her holding her dada's cock. You can tell she wants it. That's like a 7-year-old girl tops. No tits. No hair. No puberty. This is how I know our daughter would be able to take me. Even though I don't really want her pussy, I got yours. But I want her ass and her mouth. I'll wait until she's like 13 before I take her virginity. He took his daughter's virginity at a really young age. Look at that pretty little girl. She's guiding her dada's cock inside her." As CLARK

continues speaking, he is heard asking CHILD VICTIM 2 questions about the images of child pornography that he is showing to her through Skype. While he is displaying these videos for her, CHILD VICTIM 2 is engaged in sexually explicit conduct, which is being displayed to Clark and recorded by him.

21. POSSESSION OF VISUAL DEPICTIONS OF CHILD PORNOGRAPHY: The Acer Laptop ITEM - 11, both contained thousands of images of child pornography. The images and videos contain visual depictions of minor children engaged in sexually explicit conduct, including prepubescent minors and minors who are less than 12 years of age.

22. CLARK also has a folder on his Acer Laptop entitled "Rape and sexual torture" which contains videos with titles like "Faces of Death – Rape with a Stick," "Faces of Death – vagina torture," and "Faces of Death – Woodland Rape Torture."

23. **Interstate commerce:** CLARK used the Internet to communicate with CHILD VICTIM 2, which is a means of interstate and foreign commerce. The Acer computer on which the videos and images of child pornography were stored was not manufactured in the State of Indiana.

24. At all relevant periods, CLARK was a resident of the Southern District of Indiana and his collection of images was located within the Southern District of Indiana.

Kurt Spivey, TFO/FBI

Subscribed and sworn before me this 2nd day of September, 2016.

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana